72578. POTOMAC LEASING COMPANY, INC. v. FIRST NATIONAL BANK OF ATLANTA et al.
(348 SE2d 907)

McMURRAY, Presiding Judge.

Plaintiff Potomac Leasing Company, Inc. brought suit against Mayhill Homes Corporation ("Mayhill") and The First National Bank of Atlanta ("the bank") in the State Court of Fulton County. The complaint was couched in two counts. In Count 1, plaintiff alleged that Mayhill was indebted to plaintiff pursuant to a lease agreement through which plaintiff leased telephone equipment to Mayhill. In Count 2, plaintiff asserted that it was entitled to recover damages against the bank because that defendant converted the telephone equipment when it repossessed and sold Mayhill's assets pursuant to a security agreement. In this appeal we are only concerned with Count 2 of the complaint.

Before the bank filed an answer to the complaint, a settlement was negotiated by the attorneys for plaintiff and the bank. The parties stipulated that the bank need not answer the complaint during the settlement negotiation period. The settlement agreement was memorialized via correspondence between counsel. We summarize the correspondence as follows: On May 3, 1985, the bank's counsel sent a

letter to plaintiff's counsel to confirm the verbal communication of a settlement offer made by the bank. In pertinent part, the letter stated: "In order to resolve this matter, the Bank is willing to pay your client the sum of $2,000.00, in exchange for a release of all claims your client has against the Bank arising from or in connection with the transactions and occurrences alleged in the Complaint." Thereafter, on May 17, 1985, plaintiff's counsel accepted the bank's settlement offer in the following language: "Our client has agreed to accept $2,000.00 and dismiss with prejudice the suit against The First National Bank of Atlanta . . . If you will go ahead and forward a bank check I will dismiss the suit with the bank."

On June 13, 1985, counsel for the bank forwarded to counsel for plaintiff a $2,000 check made payable to plaintiff and plaintiff's counsel and a release and settlement agreement to be executed by plaintiff. Two months later, plaintiff's counsel informed counsel for the bank that the settlement was off. He wrote: "Pursuant to our client's instructions I am returning the check in this case. It is their contention that the bank had prior knowledge that the leased property [belonged] to them [plaintiff] before they [the bank] sold it and that they [the bank] delibertely [sic] converted the property of Potomac Leasing Company. I would suggest you go ahead and file your answer as soon as possible."

Thereupon, the bank filed an answer to the complaint. It denied the material allegations of the complaint and asserted that plaintiff's claims were barred by "compromise and settlement." In addition, the bank counterclaimed against plaintiff seeking damages arising from the breach of the settlement agreement. Then the bank filed a motion for summary judgment. The motion was accompanied by the affidavit of the bank's counsel and by true and correct copies of the settlement documents attached to the affidavit.

Plaintiff filed a response to the bank's counterclaim in which it alleged, inter alia, that "[d]efendant willfully and knowingly converted and sold the property of Plaintiff knowing full well that it was the property of Plaintiff as they had been so advised by Plaintiff's employee before they continued with the sale of the property . . . Plaintiff agreeed [sic] to so-called settlement under the erroneous notion that the Defendant had mistakenly sold the property without knowing that it belonged to Plaintiff . . . Defendant was verbally advised by Plaintiff's agent that the property in fact belonged to Plaintiff and that UCC filing was on record at the time of Defendant's willful, fraudulent selling and converting of this property to fatten their own purse." Additionally, plaintiff filed a "counterclaim" (presumably to defendant's counterclaim) in which it alleged that "Defendant misled both Plaintiff and his [sic] attorney as to the circumstances involved in the sale of the equipment . . . .[T]he settlement agreement

was written to Defendant based upon different facts than actually existed and of which the Plaintiff was unaware. Defendant had been told by at least two separate sources of Plaintiff's interests. The settlement agreement . . . was not signed and the check was returned. Plaintiff never would have agreed to settle without full knowledge of all the pertinent facts in this case . . . As soon as Plaintiff knew the true circumstances of the sale, Plaintiff rejected the sale." In its "wherefore" clause, plaintiff demanded judgment against the bank in the amount of not less than $15,000 "on this cross-action."

In opposition to the bank's summary judgment motion, plaintiff submitted the affidavit of its attorney and its legal portfolio manager. In his affidavit, plaintiff's attorney averred: "In making settlement recommendations, it was my understanding and the understanding of the Plaintiff that Defendant sold the property in question without knowing of Plaintiff's interest in it. I never at any time told the attorney for the Defense that I had the authority to settle the case on my own. I told the attorney that I would recommend settling based on a mistake of fact that they [the bank] were unaware of Plaintiff's interest in the property prior to the sale." The affidavit of plaintiff's legal portfolio manager reads: "At the time I agreed to settle the . . . case for $2,000, I was under the impression that the First National Bank of Atlanta had sold the leased property, which is the subject of this law suit, through a mistake of fact. I did not know and did not find out until they had already sold the property that the First National Bank knew all along that the leased property was filed in Superior Court of Fulton County under [the] UCC. [An] employee of Potomac Leasing had been present at the sale and had firmly advised them that the property was the property of Potomac Leasing and not the Mayhill Homes Corporation. My agreement to the $2,000 settlement was based solely on the fact that they sold the property without knowledge that it belonged to someone else. When I found out that they had willfully and fraudulently sold the property, I instructed our attorney not to enter into a settlement agreement."

The trial court granted the bank's motion for summary judgment. Count 2 of plaintiff's complaint against the bank was dismissed and the bank was awarded partial summary judgment (with regard to liability) on its counterclaim against plaintiff. Thus, with regard to the claims by or against the bank, the trial court ruled that "the sole issue remaining to be tried . . . shall be the amount of damages, if any, the Bank should recover from Plaintiff." The bank was instructed to deposit the sum of $2,000 into the registry of the trial court. The trial court ordered the funds to remain in the registry of the court until the final resolution of the bank's counterclaim against plaintiff.

The plaintiff appeals and contends the trial court erred in grant-

ing the bank's motion for summary judgment. *Held*:

"Under Georgia law an attorney of record has apparent authority to enter into an agreement on behalf of his client and the agreement is enforceable against the client by other settling parties. *Stone Mountain Confederate Monumental Assn. v. Smith*, 170 Ga. 515 (153 SE 209) (1930); Glazer v. J. C. Bradford & Co., 616 F2d 167 (5th Cir. 1980). This authority is determined by the contract between the attorney and the client and by instructions given the attorney by the client, and in the absence of express restrictions the authority may be considered plenary by the court and opposing parties. *Davis v. Davis*, supra; *Shepherd v. Carlton's Nice Cars*, 149 Ga. App. 749 (256 SE2d 113) (1979). The authority may be considered plenary unless it is limited by the client and that limitation is communicated to opposing parties. *Reece v. McCormack*, 188 Ga. 665 (4 SE2d 575) (1939); *Elliott v. Elliott*, 184 Ga. 417 (191 SE 465) (1937); *Glazer v. J. C. Bradford & Co.*, supra. Therefore, from the perspective of the opposing party, in the absence of knowledge of express restrictions on an attorney's authority, the opposing party may deal with the attorney as if with the client, and the client will be bound by the acts of his attorney within the scope of his apparent authority." *Brumbelow v. Northern Propane Gas Co.*, 251 Ga. 674 (308 SE2d 544).

In the case sub judice, the correspondence exchanged between counsel for plaintiff and the bank demonstrates the existence of a binding settlement contract. No restrictions were placed upon the authority of plaintiff's attorney to settle the controversy. Accordingly, plaintiff is bound by the agreement of its attorney to compromise and settle the case for $2,000. *Brumbelow v. Northern Propane Gas Co.*, 251 Ga. 674, supra.

Plaintiff contends it was entitled to rescind the settlement agreement because it was misled by the bank during settlement negotiations. In this regard, plaintiff argues it would not have agreed to settle the case if it had known at that time that the bank sold the equipment with knowledge of plaintiff's claim. This argument must fail. The affidavit of plaintiff's legal portfolio manager clearly demonstrates that plaintiff's own agent advised the bank of plaintiff's interest in the property before the sale of the property took place. Thus, plaintiff already knew what it seeks to use as an excuse to avoid the settlement agreement. Having possession of such knowledge, plaintiff cannot claim that the lack of such knowledge entitles it to rescind the settlement contract. See *Bimbo Bldrs. v. Stubbs Properties*, 158 Ga. App. 280, 281 (1) (279 SE2d 730).

*Judgment affirmed. Carley and Pope, JJ., concur.*

*James A. Glenn, Jr.*, for appellant.
*David J. Bailey, Gregory R. Hanthorn*, for appellees.